UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**WILMINGTON TRUST, N.A., as**
**SECURITIES INTERMEDIARY**                                                **PLAINTIFF**

VS.                                                                                          **CIVIL ACTION NO. 3:17-cv-00185**

**LINCOLN BENEFIT LIFE COMPANY**                                      **DEFENDANT**

# ORDER

This cause comes before the court on the motion of defendant Lincoln Benefit Life Company ("LBL"), pursuant to Fed. R. Civ. P. 12(b)(2), to dismiss this action for lack of personal jurisdiction. Plaintiff Wilmington Trust, N.A. ("Wilmington") has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motion is not well taken and should be denied.

This is a bad faith insurance case arising out of allegations that defendant LBL unlawfully refused to pay benefits on a life insurance policy which it sold in October 2007. In its statement of facts, LBL has previewed what may prove to be a rather robust defense to plaintiff's bad faith claims, writing that:

> Lincoln Benefit Life Company issued an insurance policy on the life of Adele Frankel, who was portrayed in the application as a wealthy, New York real estate tycoon. In reality, Frankel was a woman of modest means who had no need for a substantial life insurance policy and no ability to pay for it. Unbeknownst to Lincoln Benefit, the policy was a wager on human life for the benefit of complete strangers. The premiums were funded by Imperial Premium Finance, a former specialty finance company that was forced to exit the finance business after admitting during a criminal probe that it was involved in wide-scale fraud in the procurement of life insurance policies. Indeed, the accountant who verified Frankel's finances in this case pled guilty to mail and wire fraud in connection with Imperial's fraudulent insurance schemes. After learning that the policy was an illegal wagering contract and thus void ab initio, Lincoln Benefit filed a

1

declaratory judgment action in Delaware, the home state of Wilmington Trust ("Wilmington"), the current record owner of the policy. Wilmington responded by filing the present action.

[Defendant's brief at 1-2].

In response, Wilmington points out that the insurance policy at issue in this case provided that LBL could not contest it after a two-year period, and it strongly disputes defendant's characterization of the alleged illegality of its business transactions in this case. As quoted above, there are separate actions pending in both Delaware state court and this court in relation to these issues, but the ultimate merits of this case are not presently before this court. This court is, at this juncture, concerned solely with the question of whether it has personal jurisdiction over LBL, and, as to this issue, plaintiff emphasizes that defendant sold the policy in this case to a Mississippi resident and collected premiums from that resident, just as it has collected many tens of millions of dollars in premiums from other Mississippi residents since 1981. Plaintiff argues that, in light of these facts, LBL is subject to personal jurisdiction in this state, and, as discussed below, this court agrees.

This court uses a two-step process to determine whether it may exercise personal jurisdiction over a non-resident defendant in diversity cases. "First, the law of the forum state must provide for the assertion of such jurisdiction; and, second, the exercise of jurisdiction under state law must comport with the dictates of the Fourteenth Amendment Due Process Clause." *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1166 (5th Cir. 1985). In light of this authority, this court would ordinarily discuss the question of whether Mississippi's state law allows the assertion of personal jurisdiction over defendant first, but it will discuss the federal due process prong first in this case. This court chooses to do so primarily because, in its view, the law relating to the due process issues is considerably clearer than the Mississippi state law in

this context. This court also considers it important to point out a flaw in defendant's personal jurisdiction analysis which permeates its briefing on both prongs of the personal jurisdictional inquiry.

It appears to this court that, in arguing that personal jurisdiction is lacking over it, defendant utilizes a straw man argument of sorts. That is, defendant offers repeated arguments and authorities for the proposition that the stringent requirements of *general* jurisdiction are not met in this case, and this court will assume for the purposes of this motion that this argument is correct. As discussed below, however, LBL ignores the fact that plaintiff plainly alleges in its briefing that *specific*, not general, personal jurisdiction exists in this case, and its arguments are thus not responsive to those made by plaintiff. Before discussing plaintiff's allegations in this regard, this court will briefly discuss the law applicable to these two forms of personal jurisdiction.

Personal jurisdiction may be "specific" or "general." To establish specific personal jurisdiction, a plaintiff must make a *prima facie* showing of minimum contacts by making a claim arising from the defendant's contact with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984). In cases of general jurisdiction, by contrast, the plaintiff does not allege that its claim arose from the defendant's contacts with the forum, and, in such cases, the U.S. Supreme Court has made it much more difficult for the plaintiff to establish personal jurisdiction over the defendant. To establish general personal jurisdiction, a plaintiff makes the requisite showing when that defendant's contacts are "continuous and systematic," so that the exercise of jurisdiction is proper irrespective of the claim's relationship to the defendant's contact with the forum. *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L. Ed. 485 (1952).

In its briefing, defendant repeatedly cites the U.S. Supreme Court's 2014 decision in *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014) for the proposition that a corporation must be "essentially at home" in a particular state for general jurisdiction to be asserted against it in that state. As discussed below, defendant also cites a number of other federal cases dealing with the issue of *general* personal jurisdiction. Without question, *Daimler* and its progeny have made it quite difficult for a plaintiff to establish *general* jurisdiction over a corporation, but this holding has no impact upon a case in which plaintiff asserts that his claim arose from defendant's forum conduct, thus giving rise to *specific*, not general, jurisdiction.[1]

Plaintiff makes it abundantly clear in its briefing that it is, in fact, asserting specific jurisdiction over defendant, writing that:

> Minimum contacts exist if there is "specific jurisdiction" over the nonresident defendant. *See Hancock Fabrics, Inc. v. Rowdec, LLC*, 2013 WL 866977, at *4 (N.D. Miss. Mar. 7, 2013). Specific jurisdiction, in turn, requires a showing that (1) the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) the plaintiff's cause of action arises out of, or results from, the defendant's forum-related activities; and (3) the exercise of personal jurisdiction is fair and reasonable. *Luv N' Care, Ltd. v. Insta-Mix, Inc.,* 438 F.3d 465, 469 (5th Cir. 2006). Here, each of the three requirements for specific jurisdiction are satisfied.
>
> First, LBL purposely directed its insurance activities to Mississippi and purposely availed itself of the benefits of transacting life insurance business in Mississippi. To be sure, LBL applied for, and obtained, a license from the Mississippi Insurance Department, which it has held since 1981. Ex. A. It is licensed to sell at least three different lines of insurance in Mississippi, including life insurance, and it has appointed close to 300 agents in Mississippi to market and sell LBL's products in Mississippi. *Id.* The Market Share Report available on the Mississippi Insurance Department's website reveals that in the past five years, LBL has collected between $9 and $12 million each year in premiums from the ordinary life insurance policies it has sold in Mississippi. Comp. Ex. E. Among the policies LBL has sold in Mississippi is the Policy at issue, which LBL sold in Mississippi to a Mississippi Trust whose Trustee was a Mississippi attorney. Finally, as required by statute, LBL has authorized both the Commissioner of Insurance and a registered agent who is a resident of Mississippi to accept service on its behalf. Given

---

[1] Ironically, defendant accuses plaintiff of "conflat[ing] the concepts of general and specific jurisdiction," [reply brief at 7] but this court concludes that this is a mistake made by defendant, not plaintiff.

> LBL's extensive contacts and conduct in Mississippi, LBL could certainly "anticipate being haled into court" here. *See Rowland v. Gen. Motors of Canada Ltd.*, 2013 WL 3381512, at *1 (N.D. Miss. July 8, 2013). Thus, the first requirement for specific jurisdiction is satisfied.
>
> Second, Plaintiff's claims clearly arise out of, or result from, LBL's contacts with Mississippi. It is precisely the activities LBL has directed to Mississippi—the issuance of life insurance policies—that gave rise to Plaintiff's claims for breach of contract and fraud. Specifically, the contract claim is based on LBL's breach of a Mississippi life insurance policy that LBL issued to a Mississippi resident, pursuant to its Mississippi license, as part of its life insurance business in Mississippi, and on a form approved by the Mississippi Insurance Commissioner. Similarly, Plaintiff's fraud claim is based on misrepresentations that LBL made in that Mississippi life insurance policy to a Mississippi resident and in correspondence relating to the status and/or validity of the Policy—including correspondence that LBL purposely sent to the Trust in Mississippi. In addition, the parties agree that the Policy is governed by Mississippi law. *See Werner Air Freight, LLC v. Morsey,* No. 1:16-CV-60-SA-DAS, 2016 WL 4191234, at *4. (N.D. Miss. Aug. 5, 2016) (finding the requisite nexus between Mississippi and the injured contractual relationship where, among other things, the contract was governed by Mississippi law). Thus, the relationship among LBL, Mississippi, and the litigation clearly satisfies the second requirement of the specific jurisdiction analysis.

[Plaintiff's brief at 8-10].

Thus, plaintiff could not have been clearer in its briefing that it was alleging that specific, not general, jurisdiction exists over LBL, and this court notes that there is significant proof in the record supporting this argument. Most notably, the insurance policy at issue in this case was addressed to a William A. Brown, in his capacity as trustee, at a Hernando, Mississippi address. [Exhibit A at 1]. Moreover, the policy contains provisions which, plaintiff alleges, were fraudulent and which gave rise to its claims in this case. Plaintiff takes particular issue with the "incontestability" clause in the policy, in which defendant represented that "[w]e will not contest this policy after it has been in force during the lifetime of the insured for two years" unless one of three events occur, none of which plaintiff contends are applicable in this case. [Id. at 20]. Plaintiff notes that the insured Ms. Frankel lived for several years after purchasing the policy and

5

it accordingly alleges that defendant fraudulently represented that it would not contest the policy after two years.

In response, LBL emphasizes that the Mississippi trust which was the initial customer of the policy later sold it to plaintiff Wilmington, and it contends that this change of ownership removes any argument that it is subject to personal jurisdiction based upon having initially sold the policy to a Mississippi resident. Specifically, defendant argues that:

> However, each of these alleged "contacts" took place long before Wilmington took ownership of the policy. Because Lincoln Benefit's alleged contacts with Mississippi did not involve Wilmington and are irrelevant to Wilmington's claims, Wilmington cannot "take advantage" of these contacts to establish personal jurisdiction. . . . Indeed, all of the contacts and facts giving rise to Wilmington's claims against Lincoln Benefit took place in states other than Mississippi. First, Wilmington's fraud claim turns on alleged statements made by Lincoln Benefit in Nebraska and received by Wilmington in Michigan or Delaware – not Mississippi. Wilmington does not identify any Mississippi-based conduct relating to the purported fraudulent statements related to Wilmington. In addition, the premium payments made by Wilmington on the subject policy were made from Michigan or Delaware to Lincoln Benefit in Nebraska. These payments therefore are insufficient to confer jurisdiction.

[Reply brief at 8-9].

It appears that these arguments go to the crux of the jurisdictional issues in this case, but, crucially, defendant has failed to support them with any precedent on point. In particular, defendant cites no authority for the proposition that allegedly false promises made by an insurer in an insurance policy must be disregarded for specific personal jurisdiction purposes if the policy is subsequently sold to a third party. This fact pattern does not strike this court as being a particularly unusual one, considering that rights under contracts of various sorts are commonly sold and transferred between individuals and companies. That being the case, if the law actually supported defendant's position on this issue, then it seems likely that it would have been able to find case law saying so. Defendant instead cites *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 418 (5th Cir. 2001) and *Bristol-Myers Squibb Co. v. Super Ct. Cal.*,

137 S. Ct. 1773, 1780 (2017) in support of the argument quoted above, but neither of these decisions involved facts even remotely analogous to those in this case. In *Submersible*, for example, suit was brought against vessel owner for the conversion of some of plaintiff's equipment while the vessel was docked in a Mexican port. *Id*. *Bristol-Myers Squibb* involved a products liability action against a prescription drug manufacturer, and the decision involved an application of specific jurisdiction principles in the unique context of mass-joined products liability actions. *Id.*

Neither *Submersible* nor *Bristol-Myers Squibb* provides defendant with any helpful authority which this court can discern, and defendant's quotation of *Bristol-Myers Squibb*'s observation that "specific jurisdiction must be measured according to the 'suit'", 137 S. Ct. at 1780, strikes this court as saying nothing of any real benefit to defendant. Indeed, the "suit" in this case alleges that the promises which defendant made in issuing the policy to a Mississippi resident were breached, and were indeed fraudulent, and it thus appears that the "suit" in this case alleges that specific jurisdiction exists over defendant. In the absence of any case law casting doubt upon jurisdiction, this court is unwilling to overlook the fact that defendant issued an insurance policy in Mississippi which included an incontestability clause which plaintiff claims was breached and which allegedly gave rise to its claims in this case. Personal jurisdiction involves the question of the fairness of asserting claims against a particular *defendant* in a particular state, and it thus appears to this court that, in a case based upon promises made by an insurer in a policy, the focus should be upon the *defendant*'s actions and not upon whether the policy happened to have been sold to a different third party at a later date. This court is certainly open to any authority from defendant suggesting otherwise, but it has provided none.

The Due Process Clause of the Fourteenth Amendment limits the power of a state court to exert personal jurisdiction over a nonresident defendant. "[T]he constitutional touchstone" of the determination whether an exercise of personal jurisdiction comports with due process "remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985), *quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945). Minimum contacts must have a basis in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S., at 475, 105 S.Ct., at 2183.

It seems clear to this court that, in this case, defendant "purposefully avail[ed] itself of the privilege of conducting activities within" Mississippi through numerous acts, including but certainly not limited to, the selling of the policy at issue in this case to a Mississippi resident. Indeed, plaintiff notes that LBL has been authorized by the Mississippi Department of Insurance to sell insurance policies in Mississippi since 1981, and it has submitted a Market Share Report available on the Mississippi Insurance Department's website which reveals that, in the past five years, defendant has collected between $9 and $12 million each year in premiums from the life insurance policies it has sold in this state. [Defendant's Exhibit E]. It was LBL which made the conscious choice to sell an insurance policy containing a two year incontestability clause to a Mississippi resident, and this court can discern no good reason why that resident's decision to later sell the policy negates the fact that defendant did, in fact, choose to purposefully avail itself of the benefits of doing business in Mississippi. Of course, it may be argued that there are certain public policy concerns about the re-selling of life insurance policies which do not exist

8

when, say, a used car is re-sold. These public policy concerns play no apparent role in the personal jurisdiction analysis, however, including the question of whether defendant chose to avail itself of the privilege of doing business, and collecting premiums, in Mississippi. This court concludes that LBL did, in fact, make this choice, and it further concludes that it would not offend traditional notions of "fair play and substantial justice" for this court to exercise personal jurisdiction over defendant. *Int'l Shoe*, 326 U.S. at 316.

This court therefore concludes that the exercise of personal jurisdiction over LBL comports with federal due process, and it turns to the question of whether the exercise of such jurisdiction is barred by state law. In the court's view, Mississippi's long-arm statute, set forth in Miss. Code Ann. § 13-3-57, presents no impediments to the assertion of claims against LBL in this state. Section 13-3-57 consists of three prongs, known as the "contract" prong, the "tort" prong, and the "doing business" prong, and it provides that:

> Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state. Service of summons and process upon the defendant shall be had or made as is provided by the Mississippi Rules of Civil Procedure.

Defendant argues that a non-resident plaintiff such as Wilmington may not take advantage of the "contract" and "doing business" prongs of the long-arm statute, and this appears to be correct under Fifth Circuit precedent. *See Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 418 (5th Cir. 2001). This would ordinarily lead this court to consider whether the "tort" prong is applicable in this case, but it concludes that such an analysis is unnecessary here.

9

In this case, it is undisputed that defendant was authorized by Mississippi's Department of Insurance to sell policies in this state, and it is further undisputed that defendant appointed a Mississippi resident to serve as its agent for service of process. These facts appear to be of crucial importance, in light of the Mississippi Supreme Court's 1987 decision in *Read v. Sonat Offshore Drilling, Inc.,* 515 So. 2d 1229 (1987). In *Read*, the Supreme Court held that if a nonresident corporation is qualified to do business in Mississippi *and* has appointed a resident agent for service of process, it is not necessary for plaintiffs to rely on the Long-Arm Statute at all. The defendant in *Read*, a Delaware corporation, injured a Mississippi plaintiff in Louisiana. *Read*, 515 So. 2d at 1229. Because the defendant was qualified to do business in Mississippi and had a registered agent in Mississippi, the plaintiff served the defendant through that agent. *Id.* at 1229-30. Under these facts, the Mississippi Supreme Court held in *Read* that the defendant was subject to personal jurisdiction in Mississippi courts, writing that "if a foreign corporation is qualified to do business in the State of Mississippi, even though it may not be doing any business, its agent for process may be served, and the courts have personal jurisdiction of that corporation." *Read*, 515 So. 2d at 1231.

In discussing *Read* and other Mississippi authority in this context, one Mississippi district court has observed that "[o]nce a non-resident business registers with the Mississippi Secretary of State, it is treated like a resident corporation for purposes of due process" and "[i]t is not necessary to rely upon the Long-Arm Statute." *Farani v. File*, 2017 WL 1225930, *4 (S.D. Miss. Mar. 29, 2017). Based upon this court's reading of the authority in this context, the Supreme Court's holding in *Read* would seem to apply to insurance companies which have been authorized to sell policies in Mississippi *and* which have appointed registered agents for service of process. Indeed, it appears that both of these facts are required predicates, under Fifth Circuit

and federal district court precedent. *See, e.g. Herrley v. Volkswagen of Am., Inc.,* 957 F.2d 216, 219 (5th Cir. 1992) (distinguishing that case from *Read* on the basis that the defendants in *Read* "were qualified to do business in Mississippi and had resident agents for service of process in Mississippi.")

In arguing that *Read* is inapplicable, defendant writes that "Wilmington's reliance on [*Read*] is similarly misplaced. First and foremost, *Read* was decided decades ago, long before the Supreme Court's recent decisions narrowing the exercise of personal jurisdiction over non-resident defendants." [Reply brief at 4]. In this court's view, however, a 1987 case is not particularly old, and the fact that the Mississippi Supreme Court has not seen fit to question it in the intervening years may actually serve to buttress *Read*'s authoritative weight. Moreover, the cases cited by LBL in this context include primarily general personal jurisdiction cases, such as *Daimler*, and *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915 (2011), which are, as discussed previously, inapplicable in this case in which plaintiff relies upon specific personal jurisdiction.[2]

Even the specific personal jurisdiction cases cited by defendant, such as *Bristol-Myers Squibb*, are inapplicable since they construe the *federal due process* limits of personal jurisdiction. An interpretation of federal due process law involves a completely different inquiry from that of whether Mississippi chose, as a matter of state law, to place additional limits upon

---

[2] Indeed, defendant cites district court decisions from this and other jurisdictions for the proposition that "personal jurisdiction" did not exist over certain defendants which, it asserts, are similarly situated to it. *See, e.g. Mullen v. Bell Helicopter Textron, Inc.,* 136 F. Supp. 3d 740 (S.D. Miss. 2015), *Lanham v. Pilot Travel Ctrs., LLC*, 2015 WL 5167268, at *7 (D. Or. Sept. 2, 2015). In citing *Mullen* and *Lanham*, however, defendant fails to specify that both of these decisions plainly dealt with allegations of general, not specific, personal jurisdiction, and, as such, they would only constitute relevant authority in this case if plaintiff were attempting to assert general personal jurisdiction over it.

personal jurisdiction above and beyond those placed by federal due process. Indeed, this court notes parenthetically that a number of states have chosen to place *no* additional state law hurdles upon the assertion of personal jurisdiction, and they have every right under federal law to have done so. In the *Daimler* decision relied upon by plaintiff, for example, the U.S. Supreme Court noted that "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution," and it therefore inquired solely as to whether "the Ninth Circuit's holding comports with the limits imposed by federal due process." *See Daimler*, 571 U.S. at 125. Thus, it is erroneous to cite *Daimler* or any other federal personal jurisdiction case law as authority regarding the scope of any state law hurdles placed upon the exercise of personal jurisdiction in Mississippi. These are very much apples and oranges.

Defendant also seeks to distinguish *Read* based on differences in the statutory language involved in that case and the Insurance Code section at issue here. *See* Miss. Code Ann. § 81-21-1. However, defendant cites no actual case law holding that this difference in statutory language makes a dispositive difference. This court does acknowledge that the fact that the Mississippi Insurance Department, and not the Mississippi Secretary of State, authorized defendant to do business in this state provides at least an argument for distinguishing *Read*, but this argument does not strike it as being a particularly strong one. In so stating, this court deems it helpful to review the context in which these issues arose.

This is a case in which, this court has found, the defendant insurer subjected itself to personal jurisdiction in this state under federal due process principles by issuing a Mississippi policy both to the original policy-holder in this case and to many other customers throughout the state. In its complaint, plaintiff seeks recovery based upon alleged breaches of this very same Mississippi policy. That being the case, the only remaining question is whether the Mississippi

Legislature or the Mississippi Supreme Court have sought, or would seek, to place state law impediments upon plaintiff's ability to serve process upon an insurer which was authorized to do business in this state and which designated a resident agent specifically for the purpose of receiving service of process. This court can discern no good reason why they would.

Once again, the long arm statute provides that a showing that one of its three prongs is met is only required as to a "nonresident person, firm, general or limited partnership, or any foreign or other corporation *not qualified under the Constitution and laws of this state as to doing business herein*." Miss. Code Ann. §13-3-57 (emphases added). Defendant is an insurance company. In Mississippi, the State Department of Insurance is the appropriate entity to decide whether, under the "laws of this state," a particular insurance company is qualified to sell policies. Moreover, *Read* makes it clear that, in cases where a non-resident firm has, in fact, qualified to do business in this state and has appointed a resident agent for service of process, "any plaintiff" (not merely Mississippi plaintiffs) may simply serve process upon the resident agent, without even utilizing one of the three prongs of the long-arm statute. *Id.* at 1231. *See also Farani*, 2017 WL 1225930 at *4.

True enough, the defendants in *Read* and *Farani* happened to not be insurance companies, and, that being the case, the specific statutes discussed in those cases related to authorization by the Mississippi Secretary of State, and not the Mississippi Insurance Department. This court can discern no good reason, however, why the Mississippi Supreme Court would have reached any different holding in *Read* if it had been confronted with an insurance company which had been authorized to do business by the Department of Insurance and which had appointed a resident agent to receive service of process. Indeed, the language of the long-arm statute, quoted above, does not specifically require that the authorization to do

13

business be made by the Secretary of State; it merely requires that such authorization be made pursuant to "the Constitution and laws of this state." This language strikes this court as being sufficiently broad to encompass the Department of Insurance's authorization for an insurance company to issue policies in this state.

This court further agrees with plaintiff that the fact that relevant insurance statutes required defendant to appoint a Mississippi resident agent for service of process distinguishes this case from less formal authorizations by other state agencies to conduct business. *See* Miss. Code Ann. § 83-21-1(c) and (d). As persuasively argued by plaintiff in its brief:

> And, while not every authorization or license may count as "qualification" under the Long-Arm Statute, courts in this Circuit have plainly suggested that if a company is required to appoint an agent for service of process as a condition to doing business, then the authorization or license does serve the same function as qualification by the Secretary of State. For example, in *Herrley v. Volkswagen of Am., Inc*., 598 F. Supp. 690, 694 (S.D. Miss. 1984), aff'd, 957 F.2d 216 (5th Cir. 1992) the court found that a license under the Mississippi Motor Vehicle Commission Act did not suffice as "qualification." However, the court specifically noted, as a "dispositive factor," that the Mississippi Motor Vehicle Commission "does not provide for the appointment of an agent for service of process." Id. 693, 694. Similarly, in *Dale Carter, Inc. v. Specialty Claim Services, Inc.,* et al., No. 07-60806, at 6-7 (5th Cir. Apr. 8, 2008) (attached as Ex. D), the Fifth Circuit concluded that an "adjuster's license" issued by the Mississippi Department of Insurance did not render the non-resident plaintiff "qualified" where the plaintiff could "not point [the Court] to any laws or regulations indicating that licensing and compliance with Mississippi's insurance requirements require[d] appointment of an agent."

[Brief at 7].

This court finds *Carter* to be particularly helpful authority for plaintiff, since the Fifth Circuit specifically cited the absence of any cited "laws or regulations indicating that licensing and compliance with Mississippi's insurance requirements require[d] appointment of an agent" before issuing the adjuster's license at issue in that case. *Carter*, slip op. at 6-7. To ensure that this court addresses the Fifth Circuit's concerns in this regard, it will quote, in full, the statutory provisions which are relevant to insurance companies (not adjusters). Miss. Code Ann. § 83-21-

1 requires that, prior to being authorized to issue polices in this state, an insurance company must satisfy the Insurance Department that the following steps have been taken in appointing a resident agent for service of process:

> (c) It shall, by a duly executed instrument filed in his office, constitute and appoint the Commissioner of Insurance, and his successor, its true and lawful attorney, upon whom all process in any action or legal proceeding against it may be served, and therein shall agree that any process against it which may be served upon its attorney shall be of the same force and validity as if served on the company, and the authority thereof shall continue in force irrevocable so long as any liability of the company remains outstanding in this state. The service of such process shall be made by leaving a copy of the same in the hands or office of the commissioner. Copies of such instrument certified by the commissioner shall be deemed sufficient evidence thereof, and service upon such attorney shall be deemed sufficient service upon the principal.
>
> (d) It shall appoint as its agent or agents in this state some resident or residents thereof, other than the commissioner; such appointment to be made in writing, signed by the president and secretary or manager or general agent, and filed in the office of the commissioner, authorizing the agent to acknowledge service of process for and on behalf of the company, consenting that service of process on the agent shall be as valid as if served upon the company, according to the laws of this state, and waiving all claims of error by reason of such service.

It is undisputed in this case that LBL complied with both these requirements, and this court accordingly regards *Carter* as rather strongly supporting plaintiff's position that LBL should be regarded as a resident company as to which recourse to the long-arm statute was unnecessary.

Having said that, this court acknowledges that *Carter* was an unpublished opinion which, as such, cannot establish new law in this area. Thus, to the extent that Mississippi law in this context may be regarded as unsettled, this court makes an *Erie*-guess that the Mississippi Supreme Court would conclude that its holding in *Read* applies equally to a claim arising out of a Mississippi insurance policy, which was issued by an insurance company which was authorized to sell policies in this state by the Department of Insurance and which appointed a resident agent to receive service of process. All of these factors are met in this case, and this court accordingly concludes that Mississippi state law presents no impediment to the exercise of personal

jurisdiction over defendant. This court has previously found that personal jurisdiction exists over defendant under federal due process principles, and defendant's motion to dismiss for lack of personal jurisdiction will therefore be denied.[3]

It is therefore ordered that defendant's motion to dismiss is denied.

This, the 18th day of September, 2018.

/s/ Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI

---

[3] Defendant alternatively seeks for this court to abstain from hearing this action under *Colorado River Water Conservation Dist.v. United States*, 424 U.S. 800, 813 (1976), in deference to a parallel action involving many of these same issues which is presently pending in Delaware state court. However, *Colorado River* abstention has been greatly limited by U.S. Supreme Court precedent emphasizing that federal courts ordinarily have a "virtually unflagging" obligation to exercise their jurisdiction, notwithstanding the inefficiencies which accompany parallel state and federal actions. *See, e.g. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 15, 103 S. Ct. 927, 936 (1983). This court concludes that this is not one of the truly exceptional cases in which *Colorado River* abstention would be appropriate, for essentially the reasons stated in plaintiff's brief. Indeed, this court regards as particular significant in this context the fact that all parties agree that the policy in this case is to be interpreted under Mississippi law. Obviously, this court has more experience in applying Mississippi law than a Delaware state court does, and this constitutes a rather strong reason *not* to abstain from hearing this case.